**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DEANGELA FULLER,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:24-cv-3738** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **BMW FINANCIAL SERVICES NA, LLC,** | : | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
| **Defendant.** | : | |
| | : | |

**OPINION & ORDER**

This matter is before this Court on BMW FS's motion for summary judgment. (ECF No. 40). For the reasons set forth below, this Court **GRANTS** BMW FS's Motion for Summary Judgment.

## I. BACKGROUND

### A. Factual Background

#### *1. Ms. Fuller's Employment and Promotions with BMW FS*

On June 22, 2024, Plaintiff DeAngela Fuller filed a complaint against her former employer BMW Financial Services NA, LLC, ("BMW FS"), alleging that she was wrongfully terminated in violation of the "Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq., ("FMLA"); disability discrimination in violation of Title I of the 42 U.S.C. § 12112, et seq., of the Americans with Disabilities Act of 1990 ("ADA"), as amended ("ADAAA"); and race discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII")." (ECF No. 1). Ms. Fuller was represented by counsel until August 19, 2025. (ECF No. 16). She has been proceeding as a *pro se* litigant ever since. (ECF No. 25).

BMW FS is a financial service provider for BMW Group vehicles in the United States and Puerto Rico. (ECF Nos. 40–18, 42). In addition to financing and leasing BMW Group automobiles and motorcycles, BMW FS also offers customers after-purchase support like select insurance and banking products. (*Id.*). Ms. Fuller began her employment with BMW FS on or about March 22, 2021, as a Customer Relations Specialist. (ECF No. 1). Her job responsibilities included assessing and attempting to resolve customer inquiries related to vehicles, products, parts, and service. (ECF No. 42 at 2). On or about October 25, 2021, Ms. Fuller was promoted to a CR Resolution Specialist, and on April 25, 2022, she was promoted to a CR Case Management Specialist. (*Id.* at 2–3).

In her initial offer letter, BMW FS informed Ms. Fuller that she was an at-will employee, which meant the company could fire Ms. Fuller for any lawful reason at any time. (*Id.*). This "at-will" employment language was consistent throughout each offer letter Ms. Fuller received when her position changed. (*Id.*).

### 2. *BMW FS's Anti-Discrimination Policies*

BMW FS maintains anti-discrimination, anti-harassment, and anti-retaliation policies which are accessible through the company's internal portal. (*Id*. at 3). The policies permit and encourage the reporting of abusive conduct, harassment, discrimination, and retaliation. (*Id*.). An BMW FS employee has at least four options if they need to report the aforementioned conduct; further there is language in the ethics policy that requires reporting. (*Id*. at 4). Ms. Fuller did not use any formal channels to file any complaint (ECF No. 42 at 5), and there is no evidence in the record of any informal complaints.

### 3. *BMW FS's Attendance and Time Away from Work Policy*

Effective March 31, 2021, BMW FS's Attendance and Time Away from Work ("Attendance") policy stated,

> Every Associate is expected to Report to Work promptly at the time of their scheduled shift, as their job function requires… It is extremely important to manage your paid absences in an appropriate manner and to minimize Unscheduled Absences… BMW FS does not allow for the use of non-paid time away from work, unless the Associate qualifies for leave under applicable federal or state law or needs unpaid leave as an accommodation under applicable federal, state, or local laws.

(ECF No. 40-8, Exhibit 4). Each year BMW FS provided its employees with 80 hours of Vacation time, 72 hours of Floating Holiday time, and 40 hours of Sick/Personal Illness time with additional paid bereavement leave if applicable. (ECF Nos. 40-8, Exhibit 4; 40-1 at 11). The Policy explicitly stated that any violation of the policy may lead to disciplinary action, including termination of employment. (No. 40-8, Exhibit 4). Ms. Fuller received notice of this policy. (ECF No. 42 at 5).

BMW FS updated its Attendance policy in 2023; it included substantially similar language to the 2021 Attendance policy. The 2023 Attendance policy (ECF No. 40-9, Exhibit 5), included language noting the importance of proper management of PTO, no unpaid time off unless required by state or federal law, and the company's stance on the misuse of PTO. (*Id.*). Under both policies, it is the employee's responsibility to track and manage their PTO usage. (ECF Nos. 40-8, Exhibit 4; 40-9, Exhibit 5).

Ms. Fuller admits that in 2022, she exceeded her allotments of Vacation PTO and Floating Holiday PTO. (ECF No. 42 at 7). Additionally, Ms. Fuller carried over 1.75 hours of Sick/Personal Illness time from 2021, which gave her 41.75 total hours of sick time in 2022—all of which she admittedly used in 2022. (*Id.* at 7–8). Ms. Fuller also received and used 56 hours of paid bereavement. (*Id.*).

When an employee's PTO bank becomes low, BMW FS sends the employee a Paid Time Off – Low Balance Notification Letter ("Low Balance Notification"), which restates the parameters articulated in the Attendance and Time Away from Work, including the fact that

exceeding PTO could result in termination. (ECF No. 40-1 at 10–11). Ms. Fuller was sent a Low Balance Notification on November 3, 2022, that indicated she only had 2.5 hours of Vacation PTO remaining. (ECF No. 40-10, Exhibit 6). Ms. Fuller acknowledged the letter with an e-signature. (ECF No. 42 at 12). At this point in time, because Ms. Fuller had exceeded her allotted PTO in all other categories, the 2.5 hours of Vacation PTO was her only PTO left for 2022. (*Id.*).

*4. Intermittent FMLA Leave*

Ms. Fuller was diagnosed with COVID-19 in October 2022, which led to a subsequent diagnosis of "long COVID." (ECF No. 1 at 4). This diagnosis symptomology includes "shortness of breath, dizziness, headaches, heart palpitations, and extreme fatigue." (*Id.*). Following her diagnosis, Ms. Fuller inquired with the Benefits department of BMW FS about FMLA leave, and after email correspondences and other exchanges of information, Ms. Fuller's FMLA leave was approved by New York Life Insurance Company ("New York Life"), BMW FS's third-party administrator. (ECF No. 42 at 8–9).

On November 14, 2022, Ms. Fuller was approved for FMLA leave from October 26, 2022, to December 9, 2022, which was communicated in a letter from New York Life ("November 14 Letter"). (*Id*. at 10; ECF No. 40-15, Exhibit 1). The November 14 Letter stated Ms. Fuller's approved leave included two occurrences of up to eight consecutive work hours every week for incapacity and one occurrence of up to six consecutive work hours every four weeks for office visits. (ECF No. 40-15, Exhibit 1). The letter also included a section titled "**What you need to do to report time used**." It states:

> You are required to report your intermittent time used immediately, if possible, but at least within 48 hours by one of the following options:
> - Phone: Report leave time through the Call Center at 888.842.4462.
>   - o Follow the prompts to report your time on an existing leave
>   - o Call Center is open from 7am to 7pm CST

- Web: Log on to www.myNYLGBS.com and click the "Disability/Leave of Absence" dropdown option under the "Review My Coverage" tab. Under the heading "How to Request a Leave", click the "submit a request for a disability or leave of absence" link.
  You can report time on the web any time 24/7/365.

If your need for leave changes, please contact us as soon as possible.

(*Id.*). Based on her conversations with an employee from the Benefits department, Ms. Fuller admitted that she knew she did not need to use PTO if FMLA was approved, and the inverse, if FMLA leave was not approved, she would need to use PTO. (ECF No. 42 at 10). Ms. Fuller also admitted that she knew of the 48-hour reporting requirement and that reporting could be done via phone or the web portal. (*Id*).

After receiving approval for intermittent FMLA leave, Ms. Fuller was approved for leave successfully on multiple occasions. (ECF Nos. 40-1 at 11; 42 at 13). In the instances where her FMLA leave had been approved, Ms. Fuller used New York Life's web portal and dropdown menu to report her requested time off. (ECF No. 42 at 13). At issue in this case are three dates where Fuller's leave was denied due to her allegedly not reporting her leave within the required 48-hour time frame. (ECF Nos. 1 at 5; 40-1 at 11–12). The dates at issue are November 18, 2022, December 6, 2022, and December 7, 2022. (ECF No. 1 at 5).

On December 22, 2022, Ms. Fuller was notified via a New York Life letter ("December 22 Letter") that her requested leave for November 18, December 6, and December 7, 2022, were all denied for being untimely submitted. (ECF No. 40-16). The total time denied was 16.5 hours. (*Id*).

Ms. Fuller admits that the 16.5 hours of requested FMLA leave was denied but disputes the underlying basis for the determination. (ECF No. 42 at 13–14). Fuller alleges that she was absent from work due to flareups of her serious health condition and attempted to exercise her rights under the FMLA. (ECF No. 1 at 5). While she admits she was aware of the reporting process

through the New York Life portal, Fuller contends that there was also an informal practice/policy in which BMW FS "permitted others to either inform their supervisors directly or adjust their Workforce schedules instead of calling off through New York Life about medically-related absences/attendance without being disciplined." (*Id.* at 5–6).

Regarding November 18, 2022, Ms. Fuller alleges that she was incapacitated with a severe migraine and therefore informed her supervisor of her absence via text message. (ECF Nos. 1 at 6; 42 at 13). She then reported the absence to New York Life on Monday, November 21, 2022, which was the next business day following her incapacitation. (ECF No. 1 at 7). As for December 6 and 7, Ms. Fuller alleges that she also notified her supervisor and subsequently reported the absences through New York Life on or about December 8, 2022. (*Id.*).

On December 22, 2022, Ms. Fuller was formally notified by New York Life that the leave requests at issue were denied. (*Id.*). Ms. Fuller also alleges, however, that prior to receiving the formal letter, she logged into the New York Life portal on December 12, 2022, to determine whether her leave for a December 15, 2022, surgery was approved. (ECF Nos. 1 at 7; 42-1 at 3). She claims that at this time, she noticed her December 6 and 7 absences were not appearing in the system, so she contacted a New York Life representative, who allegedly entered the absences during the phone call. (*Id.*)

*5. Ms. Fuller's termination from BMW FS*

On December 28, 2022, New York Life sent a letter to BMW FS ("December 28 Letter") summarizing Ms. Fuller's intermittent leave absences, including which request had been approved and denied. (ECF No. 40-17). The December 28 Letter stated that the following requests were denied: November 18, 2022, for 6.5 hours; December 6, 2022, for 2 hours; December 7, 2022, for 8 hours; December 27, 2022, for 8 hours; and December 28, 2022, for 8 hours. (*Id.*).

Thereafter, on January 11, 2022, Ms. Fuller met with a BMW FS Human Resources representative to discuss possible termination for exceeding her allotted PTO in 2022. (ECF No. 42 at 15). Days later, on January 20, 2023, Ms. Fuller was terminated by BMW FS allegedly for exceeding her 2022 PTO allotment in violation of company policy. (ECF No. 1 at 8). Ms. Fuller argues that BMW FS was aware that her absences were related to her disability and used her FMLA qualifying absences as a negative factor in her employment. (*Id.* at 8–9). Additionally, Ms. Fuller contends that BMW FS allowed other similarly situated employees who were white and not disabled to report absences to their supervisors without adhering to company policy that required reporting absences to New York Life within the 48-hour window. (*Id.* at 9). She further alleges that she was replaced with "an individual who was either not disabled, actual or perceived, did not suffer from a serious health condition, did not take medical leave, whose race was not African American, and/or whose color was not black." (*Id.*).

vi. *Ms. Fuller's disputes with BMW's Motion for Summary Judgment*

Ms. Fuller disputes that there are not facts in the record to show racial discrimination, disability discrimination, failure to accommodate, FMLA discrimination, and FMLA retaliation. (ECF No 42. at 17–18). In support of her denials, Ms. Fuller submitted a personal declaration restating the aforementioned facts. (ECF No. 42-1). She also filed declarations of Sondra Davis Bryant and Zayliah Fuller, both of whom recounted Ms. Fuller emotional state during her termination meeting and throughout her December 15 surgery, respectively (*Id.*).

Ms. Fuller also filed a screenshots of text messages between her and her supervisor, email communications with BMW Human Resources, and a copy of a doctor's note. (*Id.*) Lastly, Ms. Fuller submitted three transcripts from calls she had with New York Life representatives in January 2023. (*Id.*). Among other things discussed, the conversations focused on Ms. Fuller's inquiring

about New York Life's ability to track when clients or New York Life employees access the website to input absences. (*Id.*). The New York Life representatives informed Ms. Fuller that the company did not track this data. (*Id.*). BMW FS, in their Reply brief, dispute the validity of call transcripts as inadmissible hearsay. (ECF No. 46 at 4–5).

### B. Procedural History

On April 23, 2024, the Equal Employment Opportunity Commission ("EEOC") issued a notice of right to sue to Ms. Fuller. (ECF No. 1). Then on July 22, 2024, Ms. Fuller filed her complaint in this matter against BMW FS. (ECF No. 1). On February 19, 2026, BMW FS filed its Motion for Summary Judgment (ECF No. 40). On March 13, 2026, Ms. Fuller filed her Response in Opposition to Summary Judgment (ECF No. 42). On March 30, 2026, BMW FS filed a Reply brief. (ECF No. 46). Accordingly, the pending motion has been fully briefed is now ripe for this Court's review.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute is about a

material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

Courts evaluate *pro se* motions with several principles in mind. *Pro se* litigants are given more latitude than parties proceeding counseled by lawyers. *See Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992). This does not mean, however, that *pro se* litigants benefit from any "lenient treatment of substantive law." *Johnson v. Stewart*, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010). For instance, *pro se* actions that are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" divest the federal court of subject matter jurisdiction and may be dismissed by the court on its own accord. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

## III. LAW AND ANALYSIS

In the Complaint, Fuller alleges six different claims related to her termination from BMW FS. In BMW FS's view, Fuller, who was an at-will employee, was terminated solely because she violated BMW FS's Attendance and Time Away from Work policy. (ECF No.40-1 at 2). BMW FS further contends that there are no genuine issues of material fact as to any of Fuller's claims and thus summary judgment is warranted.

Pursuant to Federal Rule of Civil Procedure 56(c)(1), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In response to Defendant BMW FS's Motion for Summary Judgment (ECF No. 41), Plaintiff Fuller submitted Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (ECF No. 42). Additionally, Fuller attached various exhibits including declarations, text messages, a letter from her doctor, email communications between herself and BMW FS HR, and two transcripts of her calls with New York Life. (ECF No. 42-1). Unfortunately, Fuller's briefing is devoid of any memorandum in opposition containing citations to the record or legal arguments supporting her contentions that there are genuine issues of fact in this case. Thus, Fuller's submitted opposition motion does not comply with Federal Rule 56(c)(1) and fails to meaningfully oppose BMW FS's arguments. *Clark v. UBS Grp. AG*, 2023 WL 9023352, at *1 (6th Cir. Aug. 23, 2023) ( holding that the district court did not err in granting summary judgment for the plaintiff where "[the plaintiff] filed several responses to the summary judgment motion that generally disputed the defendants' statement of material facts. But the responses cited the record on only a few occasions, and those citations did not refer to proper evidence that meaningfully opposed the defendants' summary judgment motion.").

Additionally, Fuller's *pro se* status does not absolve her from compliance with the Federal Rules. *Faryen v. United Machining Inc.*, 2016 WL 5106975, at *5 (E.D. Mich. Aug. 16, 2016), *report and recommendation adopted,* 2016 WL 4988255 (E.D. Mich. Sept. 19, 2016), *aff'd,* 2018 WL 3064298 (6th Cir. Apr. 13, 2018) ("[A] party's status as a pro se litigant does not alter the duty on a summary judgment motion to support the party's factual assertions with admissible evidence."); *Plemons v. Washburn*, 2019 WL 6315527, at *2 (M.D. Tenn. July 16, 2019), *report*

*and recommendation adopted,* 2019 WL 6273315 (M.D. Tenn. Nov. 25, 2019) (denying plaintiff's motion for summary judgment where the plaintiff failed to comply with Rule 56(c)(1) and reasoning that the lenient treatment of pro se litigants has limits). Accordingly, this Court may treat BMW FS's Motion for Summary Judgment as effectively undisputed. *Clark*, 2023 WL 9023352, at *1.

In such instances, where a party fails properly to oppose a summary judgment motion "[a] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded; at a minimum, the court is required to examine the motion to ensure that the movant has met his initial burden. ...But, in the absence of a response, the court will not sua sponte comb the record from the partisan perspective of an advocate for the non-moving party. ...Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence …if such evidence supports a conclusion that there is no genuine issue of material fact…." *Faryen*, 2016 WL 5106975, at *4 (internal quotations and citations omitted). Accordingly, this Court will now consider whether BMW has met its burden of establishing that there are no genuine issues of material fact as to any of Fuller's claims.

**A. FMLA Interference**

The Sixth Circuit evaluates FMLA interference claims using the *McDonell-Douglas* burden shifting framework. *See Donald v. Sybra*, *Inc.*, 667 F.3d 757, 762 (6th Cir. 2012) (citing *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008)). In order to make a prima facie showing for FMLA interference, "a plaintiff must demonstrate that[:] (1) she was an eligible employee; (2) the defendant was a covered employer; (3) that plaintiff was entitled to FMLA leave; (4) the plaintiff gave the defendant notice of intent to take leave; and (5) the defendant denied or interfered with the plaintiff's benefits to which she was entitled." *Gabbard v. Butler Cnty.*, 2025 WL 874731,

at *4 (S.D. Ohio Mar. 20, 2025) (citing *Render v. FCA US. LLC*, 53 F. 4th 905, 914 (6th Cir. 2022)). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to "prove it had a legitimate reason unrelated to the exercise of FMLA rights for terminating the employee." *Donald*, 667 F.3d at 762 (citing *Grace*, 521 F.3d at 670). Finally, the burden shifts back to the plaintiff to show that the defendant's proffered reason was pretextual, that is, that it "had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination." *Id*. If an employer "takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which it is entitled." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007).

BMW FS argues that Fuller cannot establish a prima facie case and therefore her FMLA interference claim must be dismissed. (ECF No. 40-1 at 14). Specifically, BMW FS argues that Fuller failed to provide adequate notice of her intention to take her intermittent FMLA leave, and therefore BMW FS did not deny her benefits to which she was entitled. (*Id.* at 15). BMW FS notified Fuller that in order to request intermittent leave she was required to report absences to New York Life within 48 hours. (*Id.* at 15; ECF No. 40-15). Oppositely, Fuller contends that she notified her supervisor of every absence at issue. (ECF No. 42-1 at 7). Despite such, Fuller does not dispute that she was aware of the requirement that she report her intermittent leave requests to New York Life within 48 hours of the absence. Case law supports that employers are entitled to deny FMLA leave for failure to comply with internal notice policies. *See Alexander v. Kellogg USA, Inc.*, 674 F. App'x 496, 500 (6th Cir. 2017) (denying plaintiff's FMLA interference claim where plaintiff failed to notify of his intent to be absent within the required time frame). Thus, BMW FS was within its right to deny Fuller's leave requests for being untimely. Additionally, Fuller properly reported her intermittent leave on various occasions, indicating that she was aware

of and could comply with the requirements. Given that Fuller has failed to submit an opposition motion that meaningfully disputes or challenges BMW's arguments, this Court finds that Fuller failed to provide adequate notice of her intention to take her intermittent FMLA leave. Accordingly, she has failed to establish a prima facie case, and her FMLA interference claims is **DISMISSED**.

**B. FMLA Retaliation**

In order to state an FMLA retaliation claim, Fuller must allege that "(1) [s]he was engaged in a protected FMLA activity; (2) the employer knew [s]he was exercising [her] rights under the Act; (3) after learning of the employee's exercise of [her] FMLA rights, the employer took adverse employment action against [her]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." *Neuhardt v. Charter Commc'ns, LLC*, 2020 WL 996450, at *5 (S.D. Ohio Mar. 2, 2020). BMW argues that Fuller cannot establish her prima facie FMLA retaliation case because she did not comply with the notice requirements, and therefore, did not engage in a protected activity. This Court agrees.

As stated above, Fuller has not disputed that she did not comply with the required reporting procedures, nor does she offer any excusable neglect that caused her lack of reporting. Where Fuller did not report her FMLA activity as required, she has not demonstrated that she was engaged in protected activity. *Alexander*, 674 F. App'x at 501 ("The catalysts for [the employer's] supposed retaliation—terminating [plaintiff]—were his unexcused, ultimately excessive absences beginning on November 20. As the district court pointed out, however, Cigna permissibly declined to approve these days under [plaintiff's] FMLA leave. Since the statute cannot protect non-FMLA leave, [plaintiff] cannot satisfy the first element of a prima facie FMLA case.").

Accordingly, this Court finds that Fuller has failed to create a genuine issue of material fact as to her FMLA retaliation claim. Fuller's FMLA Retaliation claim is hereby **DISMISSED**.

**C. ADA Discrimination**

To establish a prima facie case of disability discrimination, Fuller must demonstrate: "(1) that she is disabled; (2) that she is otherwise qualified for the job, with or without reasonable accommodation; (3) that she suffered an adverse employment decision; (4) that the employer knew or had reason to know of her disability; and (5) that, after her termination, the position remained open, or the disabled employee was replaced." *Williams v. Emco Maier Corp.*, 212 F. Supp. 2d 780, 783 (S.D. Ohio 2002). Fuller cannot sustain her ADA discrimination claim because she has failed to point to any evidence supporting the fact that after her termination her position either remained open or that she was replaced. *Whitesell v. FMS Fin. Mgmt. Servs., LLC*, 2020 WL 2770017, at *4 (M.D. Tenn. May 28, 2020) (granting summary judgment where the plaintiff failed to address disability discrimination in her opposition motion and the defendant established that it was undisputed that Plaintiff was not replaced by following her termination). At the prima facie stage, it is Fuller's burden to establish the elements of her claim. Accordingly, Fuller's ADA discrimination claim is hereby **DISMISSED**.

**D. ADA Failure to Accommodate**

To establish a prima facie case of failure to accommodate under the ADA, Fuller must demonstrate that: "(1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Judge v. Landscape Forms, Inc.,* 592 F. App'x. 403, 407 (6th Cir.2014) (citation omitted).

BMW contends that Fuller cannot establish an ADA failure to accommodate claim where her medical accommodation was approved by BMW and she took intermittent FMLA leave at least six times. (ECF No. 40-1 at 19–20). It is undisputed that Fuller requested accommodation for her long COVID and received such accommodation. As such, it is unclear to this Court how Fuller seeks to substantiate her failure to accommodate claim and she provides this Court with no argument or case law. Because Fuller was granted accommodation, this Court construes her claims to be more properly brought as an FMLA interference claim. As stated above, however, on the three dates at issue, Fuller informed her supervisor of her absence but presents no evidence that she informed her employer she was utilizing her intermittent FMLA leave for said absences. Additionally, Fuller was aware of the process to communicate to her employer that she intended to take FMLA leave yet she did not avail herself of the process within the appropriate time frame. Thus, BMW cannot be said to have committed an FMLA violation where Fuller was granted accommodation and simply did not provide her employer with notice of her leave. *Sukari v. Akebono Brake Corp.*, 2019 WL 3456842, at *6 (E.D. Mich. July 31, 2019), *aff'd,* 814 F. App'x 108 (6th Cir. 2020) (denying a failure to accommodate claim and reasoning that "[p]laintiff does not mention her disability as a reason for her need to miss work in any of the written communications about her many absences. Moreover, the evidence establishes that Defendant approved without objection [p]laintiff's formal requests for accommodations related to her disability."). Accordingly, Fuller's ADA failure to accommodate claim is hereby **DISMISSED**.

**E. ADA Retaliation**

In order to establish a claim for retaliation under the ADA, Fuller must demonstrate "a prima facie case of retaliation, which requires a showing that: '(1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse

action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action.'" *Schwendeman v. Marietta City Schs.*, 436 F. Supp. 3d 1045, 1066 (S.D. Ohio 2020), *aff'd*, 2020 WL 7711327 (6th Cir. Dec. 14, 2020) (citations omitted). BMW contends that Fuller's ADA retaliation claim must fail because she fails to present any evidence that she engaged in protected activity under the ADA. (ECF No. 40-1 at 20).

"An individual engages in protected activity, when, prior to her termination, she opposes any act made unlawful by the ADA or files a charge, testifies, or participates in an investigation under the ADA." *Campbell v. Ohio Dep't of Rehab. & Correction*, 2022 WL 3682293, at *7 (S.D. Ohio Aug. 25, 2022) (citing 42 U.S.C. § 12203(a)). Fuller does not dispute that she never made any formal complaints against BMW for the alleged misconduct. (ECF No. 42 at 16–17). Without any allegations that she engaged in protected activity this Court cannot entertain Fuller's claims. *White v. Standard Ins. Co.*, 529 F. App'x 547, 551 (6th Cir. 2013) (holding that the district court properly granted summary judgment where the plaintiff failed to establish that she engaged in protected conduct and cited no authority to support her arguments); *see also Campbell*, 2022 WL 3682293, at *7. Accordingly, Fuller's ADA retaliation claim is hereby **DISMISSED**.

### F. Title VII Race Discrimination

Pursuant to Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a)(1). To establish a race discrimination claim under Title VII, a plaintiff must demonstrate either direct or circumstantial evidence of discrimination. *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir.1997).

In the Complaint, Fuller conclusorily alleges that BMW FS discriminated against her on the basis of her race, that she was treated differently than other white employees, and that she was replaced by a white employee. (ECF No. 1 at 15). Fuller provides no evidence in the Complaint[1] nor in her opposition briefing to support her contentions. She further does not point to any other similarly situated employees who she refers to or evidence supporting that she was replaced by an employee of a non-protected class. *McGowan v. City of Lavergne, Tennessee*, 809 F. Supp. 3d 807, 820 (M.D. Tenn. 2025) (reasoning that failure to identify a similarly-situated comparator outside of one's protected class is a sufficient basis alone to dismiss a race retaliation claim). Accordingly, Fuller's Race Discrimination Claim is hereby **DISMISSED**.

## IV. CONCLUSION

For the reasons stated above, BMW's Motion for Summary Judgement is **GRANTED**. Fuller's claims are hereby **DISMISSED**. This case is closed.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 30, 2026**

[1] This Court does not find Ms. Fuller's race discrimination claims to be insufficient on the basis of her *pro se* status. At the initiation of this lawsuit, Ms. Fuller had counsel, and her Complaint was drafted with the assistance of counsel. Accordingly, any deficiencies this Court has identified with the Complaint, such as the failure to identify similarly situated co-comparator, are of no fault of Ms. Fuller. The race discrimination claim as pleaded by her counsel was deficient on its face. *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1101 (S.D. Ohio 2021) (granting dismissal of the complaint where the plaintiff failed to identify or allege some degree of detail regarding comparator employees for his race discrimination claim).